FILED

NOV 08 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRCT COURT
EASTERN DISTRCT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:23CR620 JAR/NCC |
| | ) | |
| ROBERT BAINES, | ) | |
| | ) | |
| Defendant. | ) | |

**INDICTMENT**

The Grand Jury charges that:

**INTRODUCTION**

At times relevant to this Indictment:

**A. The Defendant**

1. The defendant, **ROBERT BAINES** ("Defendant Baines"), resided in St. Louis, Missouri, within the Eastern District of Missouri.

2. Defendant Baines was the owner and primary user of a financial account with MetaBank n/k/a Pathward, N.A., including account number ******2111 (the "MetaBank Account").

**B. The Paycheck Protection Program**

3. The Paycheck Protection Program ("PPP") was a program administered by the Small Business Administration (the "SBA") that authorized forgivable loans to provide economic relief to small businesses adversely impacted by COVID-19. The PPP permitted participating third-party lenders to approve and disburse PPP loans for qualifying businesses, including sole proprietors with no employees. PPP loans were fully guaranteed by the SBA.

4. To obtain a PPP loan, a business had to apply for the loan by submitting a PPP loan application.

5. In the case of an applicant who was a sole proprietor with no employees, such applicant was required to personally sign the PPP loan application.

6. For an applicant who was an individual sole proprietor with no employees, the PPP loan application required such applicant to acknowledge the program rules and to make certain affirmative certifications to be eligible to obtain the PPP loan, including that the applicant was in operation on February 15, 2020, that the applicant had not permanently closed, and that the applicant was, in fact, a sole proprietorship with no employees.

7. An individual sole proprietor with no employees who applied for a PPP loan was required to represent, and provide documentation substantiating, his or her gross income amount from 2019 or 2020 as reported by the applicant to the Internal Revenue Service ("IRS") on Form 1040, Schedule C.

8. At the end of the PPP loan application, the applicant was required to certify that the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

9. The proceeds of a PPP loan were to be used by the applicant only for business-related purposes, such as payroll costs, which, for a sole proprietor with no employees, meant business expenses plus owner compensation.

10. A successful applicant, including a sole proprietor with no employees, who received a PPP loan (referred to as a "First Draw" PPP loan) was, in certain circumstances, permitted to apply for a second PPP loan (referred to as a "Second Draw" PPP loan).

11. Like in the First Draw PPP loan application, in the Second Draw PPP loan application, an applicant who was an individual sole proprietor with no employees was required to personally sign the application, to acknowledge the program rules, and to make certain affirmative certifications to be eligible to obtain the loan, including that the applicant was in operation on February 15, 2020, that the applicant had not permanently closed, and that the applicant was, in fact, a sole proprietorship with no employees. Such applicant was also required to again represent, and provide documentation substantiating, his or her gross income amount from 2019 or 2020 as reported by the applicant to the IRS on Form 1040, Schedule C.

12. In addition, in the application for a Second Draw PPP loan, an applicant who was an individual sole proprietor with no employees was required to certify that he or she had realized at least a 25% reduction in gross receipts (either for a specific quarter or on an annual basis) between 2019 and 2020. Such applicant was also required to certify in the application for a Second Draw PPP loan that he or she had received a First Draw PPP loan and, before the Second Draw PPP loan was disbursed, he or she would have used the full amount of the First Draw PPP loan only for eligible expenses.

13. At the end of the Second Draw PPP loan application, the applicant was required to certify that the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

14. Like the proceeds of the First Draw PPP loan, the proceeds of the Second Draw PPP loan were to be used only for business-related purposes, such as payroll costs, which, for a sole proprietor with no employees, meant business expenses plus owner compensation.

15. First Draw PPP loan applications and Second Draw PPP loan applications were electronically submitted, or caused to be electronically submitted, by the applicant by means of

interstate wire transmission.

16. Harvest Small Business Finance, LLC ("Harvest") was a participating third-party lender in the PPP.

**COUNTS ONE–TWO**
**(Wire Fraud: 18 U.S.C. § 1343)**

17. The above paragraphs from the Introduction are hereby realleged and incorporated by reference.

**A. The Scheme**

18. Beginning no later than on or about March 31, 2021, and continuing through at least on or about April 9, 2021, in the Eastern District of Missouri and elsewhere, Defendant Baines, with the intent to defraud, devised and intended to devise a scheme and artifice to defraud Harvest, and to obtain money and property from Harvest by means of materially false and fraudulent pretenses, representations, and promises.

19. Specifically, between on or about March 31, 2021 and on or about April 9, 2021, Defendant Baines electronically submitted to Harvest, or caused to be electronically submitted to Harvest, a fraudulent First Draw PPP loan application and a fraudulent Second Draw PPP loan application and, based on these fraudulent PPP loan applications, Defendant Baines obtained at least $41,484.00 in PPP loan proceeds from Harvest.

**B. The Manner and Means**

It was part of the scheme that:

***First Draw PPP Loan Application***

20. On or about March 31, 2021, Defendant Baines electronically submitted to Harvest, or caused to be electronically submitted to Harvest, a fraudulent First Draw PPP loan application.

21. In his First Draw PPP loan application, Defendant Baines falsely and fraudulently represented, among other things, that he was operating as a sole proprietorship with no employees as of February 15, 2020 and that his gross income amount as a sole proprietor in 2019 was $99,563.00, when, in truth and in fact, as Defendant Baines well knew, he was not operating as a sole proprietorship as of February 15, 2020 and he did not have any gross income as a sole proprietor in 2019.

22. In connection with his false and fraudulent representation regarding his gross income amount from 2019, Defendant Baines submitted with his First Draw PPP loan application a false and fraudulent IRS Form 1040, Schedule C, which he falsely and fraudulently represented that he filed with the IRS and which falsely and fraudulently reflected that his gross income as a sole proprietor in 2019 was $99,563.00. In truth and in fact, as Defendant Baines well knew, he did not file that IRS Form 1040, Schedule C with the IRS and he did not have any gross income as a sole proprietor in 2019.

23. Based on Defendant Baines' false and fraudulent representations in, and his and submission of false and fraudulent documentation with, his First Draw PPP loan application, Harvest approved Defendant Baines' First Draw PPP loan and, on or about April 16, 2021, Harvest electronically transferred $20,742.00 to Defendant Baines' MetaBank Account.

24. Instead of spending the proceeds from his First Draw PPP loan for business-related purposes, Defendant Baines used the proceeds for unauthorized non-business-related purposes, including, without limitation, to pay for restaurants, to pay for clothing and other personal retail items, and to pay for airline and other personal travel expenses.

***Second Draw PPP Loan Application***

25. On or about April 9, 2021, Defendant Baines electronically submitted to Harvest,

or caused to be electronically submitted to Harvest, a fraudulent Second Draw PPP loan application.

26. In his Second Draw PPP loan application, Defendant Baines falsely and fraudulently represented, among other things, that he was operating as a sole proprietorship with no employees as of February 15, 2020 and that his gross income amount as a sole proprietor in 2019 was $99,563.00, when, in truth and in fact, as Defendant Baines well knew, he was not operating as a sole proprietorship as of February 15, 2020 and he did not have any gross income as a sole proprietor in 2019.

27. In his Second Draw PPP loan application, Defendant Baines also falsely and fraudulently represented, among other things, that he had realized at least a 25% reduction in gross receipts (either for a specific quarter or on an annual basis) between 2019 and 2020, when, in truth and in fact, as Defendant Baines well knew, he had not operated as a sole proprietorship in either 2019 or 2020 and, therefore, had not realized any reduction in gross receipts (either for a specific quarter or on an annual basis) between 2019 and 2020.

28. In connection with his false and fraudulent representation regarding his gross income amount from 2019, Defendant Baines submitted with his Second Draw PPP loan application a false and fraudulent IRS Form 1040, Schedule C, which he falsely and fraudulently represented that he filed with the IRS and which falsely and fraudulently reflected that his gross income as a sole proprietor in 2019 was $99,563.00. In truth and in fact, as Defendant Baines well knew, he did not file that IRS Form 1040, Schedule C with the IRS and he did not have any gross income as a sole proprietor in 2019.

29. Based on Defendant Baines' false and fraudulent representations in, and his and submission of false and fraudulent documentation with, his Second Draw PPP loan application,

Harvest approved Defendant Baines' Second Draw PPP loan and, on or about May 3, 2021, Harvest electronically transferred $20,742.00 to Defendant Baines' MetaBank Account.

30. Instead of spending the proceeds from his Second Draw PPP loan for business-related purposes, Defendant Baines used the proceeds for unauthorized non-business-related purposes, including, without limitation, to pay for restaurants, to pay for clothing and other retail items, and to pay for airline and other personal travel expenses.

**C. <u>The Wire Transmissions</u>**

31. On or about the dates set forth below, within the Eastern District of Missouri and elsewhere, the defendant,

**ROBERT BAINES,**

having devised and intended to devise the above-described scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the above-described scheme, and with the intent to defraud, used, or caused to be used, an interstate wire communication in furtherance of, or in an attempt to carry out, some essential step in the scheme, to wit:

| Count | Date | Wire Description |
|---|---|---|
| 1 | March 31, 2021 | Submission of First Draw PPP loan application |
| 2 | April 9, 2021 | Submission of Second Draw PPP loan application |

All in violation of Title 18, United States Code, Section 1343.

**<u>FORFEITURE ALLEGATION</u>**

The Grand Jury further alleges there is probable cause that:

1. Pursuant to Title 18, United States Code, Section 982(a)(4), upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in Counts One and Two, Defendant Baines shall forfeit to the United States of America any property constituting, or

derived from, any proceeds obtained, directly or indirectly, as a result of such violation. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting, or derived from, any proceeds traceable to such violation.

2. If any of the property described above, as a result of any act or omission of Defendant Baines:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

______________________
FOREPERSON

SAYLER A. FLEMING
United States Attorney

______________________
Justin M. Ladendorf #68558MO
Assistant United States Attorney